[Sac. No. 2767. In Bank.—August 25, 1919.]

## ANGELO GARBARINO, Respondent, v. PHILIP NOCE et al., Appellants.

[1] WATERS AND WATER RIGHTS—ACTION TO DETERMINE CONFLICTING CLAIMS—PLEADING AND EVIDENCE—TITLE BY ADVERSE POSSESSION.— In an action involving the respective rights of various persons in the waters of a stream and in a certain ditch by which water is diverted therefrom, the defendants may prove title by adverse possession under the general allegation of ownership, since such an allegation may be supported by proof of ownership acquired by deed, by prescription or in any other lawful manner.

[2] ID.—EVIDENCE—ANCIENT DEED—RECITALS.—In such an action, a deed executed more than fifty years before the controversy comes within the rules of evidence applicable to ancient deeds, and the recitals therein relating to the property conveyed are competent evidence of the facts recited, even against strangers to the title.

[3] ID.—DECLARATION OF CLAIM OF FULL OWNERSHIP.—Such deed is also competent as a declaration of the grantor while in possession, as evidence that he then claimed full ownership of the ditch and water right.

[4] ID.—OWNERSHIP OF PLAINTIFF—FINDING SUPPORTED BY EVIDENCE. In this action involving the respective rights of three parties in the waters of a stream and in a certain ditch by which water is diverted therefrom, it is held the evidence sufficiently supports the finding that the defendants had not acquired title to any interest in the ditch or the water it carried.

[5] EASEMENT — ACQUISITION BY ENJOYMENT — LOSS BY DISUSER. — An easement acquired by enjoyment· is lost by a disuse thereof for the period of five years.

APPEAL from a judgment of the Superior Court of Mariposa County. J. J. Trabucco, Judge. Affirmed.

The facts are stated in the opinion of the court.

J. B. Curtin for Appellants.

John A. Wall and R. B. Stolder for Respondent.

SHAW, J.—The defendants appeal from a judgment in favor of the plaintiff.

The case involves the respective rights of the three parties in the waters of a stream known as Maxwell Creek and in a certain ditch by which water is diverted therefrom. Each party owns a small parcel of land abutting upon the creek in the outlying limits of Coulterville. Noce's land is the upper parcel, Cammissiona's is the next, and that of Garbarino is the lowest upon the stream. The part of Noce's land for which the water is claimed lies on the northerly side of the creek. The lands of Cammissiona and Garbarino are on the southerly side. The ditch in question is a foot wide at the bottom, eighteen inches wide at the top, and a foot deep. It diverts water from the stream at a dam situated about three-fourths of a mile above the land of Garbarino and about a quarter of a mile above the parcel of Noce. It is wholly on the southerly side of the stream and passes through the parcel of Cammissiona to that of Garbarino. In order to take water therefrom to the Noce land, a cut is made in the ditch so as to let the water run into the bed of the creek from whence it is taken into another ditch, on the northerly side of the creek, to the Noce land. Concerning these facts there is no dispute.

The plaintiff alleged that he is the owner of the entire interest in the ditch and in all the water it carries; that in July, 1916, defendant Noce wrongfully diverted water from the ditch and appropriated the same to his own use and that he threatens to continue to do so. He prays that he be declared to be the owner of the entire interest in the water right and in the ditch and that Noce be restrained from interfering therewith. Mrs. Cammissiona was brought in as a party defendant after the action was begun. The complaint contains no allegation as to her. The question as to her rights is raised by her answer. The claim of Noce and Mrs. Cammissiona is that the three parties to the suit are equal owners of the ditch and of the right to the water carried therein, as tenants in common, for a certain period of each year. More particularly, their claim is that the right to the common use of the ditch and to the water carried therein begins as soon each

year as the water naturally running in the creek ceases to flow down its bed as far as their lands. In explanation it should be said that as the land of each party is riparian to the stream, each has the right to use thereon a reasonable proportion of its water and that in the early part of the season of each year there is enough water in the creek to enable Noce and Cammissiona to divert it directly from the stream to their respective tracts without making use of Garbarino's ditch and that they have been accustomed to do so. This usually continues until June or the early part of July. It is only thereafter, when the water gets too low to allow this, that they resort to the ditch or claim the right to use it. After this occurs, so they each claim and allege, each party, including Garbarino, has the right to use the ditch and all the water it carries, exclusive of the others, one day in three in successive turns, for the remainder of the season, to carry water to their respective parcels of land. At that time the ditch takes all the water of the creek flowing at its head. The court found that Garbarino was the sole owner of the entire interest in the ditch and in the water it takes from the creek and gave judgment as prayed for in the complaint, but without damages. It is the contention of the defendants that this finding is contrary to the evidence. This is practically the only question in the case. Upon a review of the evidence we are of the opinion that it is sufficient to sustain the finding.

The plaintiff discusses at some length his claim that the defendants cannot prove title by adverse possession under the issues made by the pleadings. The complaint alleges that Garbarino is the owner of the ditch and of the water taken from the creek and flowing therein. The answer of each defendant alleges in general terms the ownership by such defendant of a one-third interest in said ditch and water right consisting of the right to use the same one day in each three days during the irrigating season as above stated. [1] The rule is that such a general allegation may be supported by proof of ownership acquired by deed, by prescription or in any other lawful manner. (*Rogers* v. *Miller,* 13 Wash. 82, [52 Am. St. Rep. 20, 42 Pac. 525]; *Raymond* v. *Morrison,* 9 Wash. 156, [37 Pac. 318]; *Cooper* v. *Blair,* 50 Or. 394, [92 Pac. 1074]; *Gray* v. *Walker,* 157 Cal. 381, [108 Pac. 278].)

There was testimony that the ditch was in existence as early as the year 1860 and that from that time until Garbarino acquired his land in the year 1871, the ditch and the water therein was used each year on the land of each of the parties to this action one day in each three during the period of the year above mentioned, and that this was done without asking permission of the owner of the Garbarino lot and without interference by him. There was no testimony with respect to this period that the owner of the Garbarino lot had made any statement regarding the title or right of the other parties to the ditch or water or whether or not it was done by his permission. It appears that during the years 1872 to 1875, inclusive, the Oak Flat Company turned water from Boneyard Creek into Maxwell Creek, increasing its flow in the dry season so that the persons occupying the lands in question were able to take water from the enlarged stream directly to their lands and that during that period they did not use the Garbarino ditch. They paid for this water directly to the Oak Flat Company. After the year 1875, and until July, 1916, the water was used on the land owned by Noce every year during the time above mentioned and was carried thereto through the said ditch one day in three and so on in succession during each season. Garbarino himself testified to this continuous use of the water in the manner stated. His testimony also shows a similar use by Mrs. Cammissiona on her lot, at one time for a period exceeding five years continuously.

From this evidence of long-continued use without interference, if unexplained, the court could have inferred that the use of each party was rightful and adverse and therefrom might have concluded that each had thereby acquired title by prescription to a one-third interest in the water and ditch, as claimed by defendants. But there was other evidence to the contrary. Garbarino also testified that each year during this time the other parties, before beginning to use water from the ditch, asked his permission to do so and that when so asked he gave such permission to each of them to use the ditch and water one day out of each period of three days, that he did this out of friendship and for no other consideration, and that he refused permission in the year 1916 because at that time he needed all the water on his own land. The appellant contends that this testimony is

incredible, that the statement that one would continuously, for so many years, give away a valuable right, especially in view of his own testimony that it was necessary for his own land and that the loss of the use of part of the water during that period of the season was injurious to him, surpasses belief. We cannot take this view of the testimony. The court below saw and heard the witness and is the better judge as to whether he was sincere in his statement. In the words of Mr. Justice Burnett, in deciding the case in the district court of appeal, "we cannot say that, even in this period of thrift and fierce competition, the claim of such generosity is so extraordinary as to cause us to reject it as inherently improbable." There was also other evidence of admissions by the other owners tending to prove that they acknowledged the title and ownership of Garbarino in the ditch and the water and that they had the use of it only by his permission. If this were true, it would disprove the theory of a tenancy in common acquired by continuous adverse use and would be sufficient to support the finding in question.

Other evidence tends to confirm this view. Neither of the defendants introduced any evidence tending to show the acquisition of the right they claim in any other manner than by continuous adverse use under claim of right. There was no direct evidence of the original construction of the ditch, but there was evidence justifying an inference regarding the same. A deed executed on October 6, 1862, for the Garbarino lot by one Comisione to the predecessors in interest of Garbarino, under whom he claims title, purports to convey the lot in question and the "garden thereon," and it describes the appurtenances thereto as follows: "Two water ditches connected with the garden taken out of Maxwell's Creek, one opposite of Chinatown and the other below the same, both on the same side of the creek of the garden, made and purchased to supply the garden with water." It is admitted that the ditch coming out opposite Chinatown is the one now in controversy, although some changes in the place of diversion at the head thereof have been made since that time. A later deed in the chain of title of Garbarino also specifically describes the said ditch as an appurtenance to the lot. None of the deeds in the chain of title of the other lots to the defendants mentions this ditch in any manner. The deed to Noce from Cassacia not only fails to mention the Garbarino

ditch as an appurtenance, but it does mention another ditch known as the Cassacia ditch, leading from the creek on the opposite side from the Garbarino ditch to the Noce land. The deed of October 6, 1862, aforesaid, purported to convey the full title to the property described, including the ditch. [2] Having been executed more than fifty years before the present controversy arose, it comes within the rules of evidence applicable to ancient deeds and hence the recitals therein relating to the property conveyed are competent evidence of the facts recited, even against strangers to the title. (*Randall* v. *Chase*, 133 Mass. 210; *Drury* v. *Midland R. R. Co.*, 127 Mass. 581; *Casey's Lessee* v. *Inloes*, 1 Gill (Md.); 430; *Fuller* v. *Saxton*, 20 N. J. L. 65; *Morris* v. *Callanan*, 105 Mass. 132; *Ryle* v. *Davidson* (Tex. Civ. App.), 116 S. W. 828.) [3] It is also competent as a declaration of the grantor while in possession, as evidence that he then claimed full ownership of the ditch and water right. (*Cannon* v. *Stockmon*, 36 Cal. 541; *Stockton Savings Bank* v. *Staples*, 98 Cal. 193, [32 Pac. 936].) The recitals quoted tend to show that the ditch was originally constructed by the owner of the Garbarino lot for the purpose of conveying water from the creek to that lot. The fact that the title deeds of the Garbarino lot show this particular ditch as an appurtenance while the title deeds of the other lots make no mention thereof is some evidence, at least, that the right thereto was not claimed by the owner of the other lots at the time of making the conveyances thereof. [4] All this evidence, we think, sufficiently supports the finding of the court that the defendants had not acquired title to any interest in the ditch or the water it carried.

With respect to the Cammissiona lot it further appears from the evidence that water from the ditch was not used on that lot for the period of ten years preceding the beginning of the action. If we assume that by her previous use of the ditch and water under claim of right for a period of more than five years prior to that time she had acquired the right she claims thereto, the evidence just referred to would show that she subsequently had lost it by disuse. [5] An easement acquired by enjoyment is lost by a disuse thereof for the period of five years. (Civ. Code, sec. 811, subd. 4; *Drake* v. *Russian River Land Co.*, 10 Cal. App. 666, [103 Pac. 167].)

There are no other points made in support of the appeal. It may be added that the evidence was very conflicting in many matters of detail. The conflict, however, was substantial and the court cannot interfere on appeal.

The judgment is affirmed.

Lennon, J., Wilbur, J., Olney, J., Melvin, J., Angellotti, C. J., and Lawlor, J., concurred.